UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE TOASTED OAT, INC., § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  1:21-cv-374 |
| § | |
| SNACKWERKS OF MICHIGAN, LLC, § | Hon. Hala Y. Jarbou |
| *Defendant*. § | |
| § | Oral Argument Requested |

**DEFENDANT SNACKWERKS OF MICHIGAN LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

In its Opposition, Plaintiff The Toasted Oat, Inc. ("Plaintiff") fails to address Defendant Snackwerks of Michigan, LLC's ("Snackwerks") argument on summary judgement *at all*. Snackwerks has shown, and Plaintiff does not dispute, that *the Oppenheimer transaction* was not contemplated by the parties at the time of contracting. This concession ends the inquiry and Snackwerks respectfully requests that the Court grant its motion for summary judgment.

Instead of addressing the issue presented, Plaintiff asks this Court to make a broad-sweeping and expansive ruling that any person with *general knowledge* that a startup company may want to be acquired in the future is a guarantor against the failure of *any and all* future transactions that may impair the success of the startup. Plaintiff cites to *no case law* to support this position and fails to distinguish or even discuss the case law cited by Snackwerks that clearly rejects Plaintiff's argument.

At end, Plaintiff fails to identify any fact that would indicate that *the Oppenheimer transaction* was in the contemplation of the parties at the time they entered into the MSA. Indeed, Plaintiff *cannot* establish such facts, because, as Plaintiff concedes, Plaintiff did not engage with Oppenheimer until over two years after the parties entered into the MSA. There is no information that Plaintiff could obtain via discovery to overcome this critical fact. The

undisputed facts and Plaintiff's admissions conclusively establish that *the Oppenheimer transaction* was not contemplated by the parties at the time of contracting and, therefore, damages asserted in connection with the failure of the Oppenheimer transaction were not foreseeable and are not recoverable.

I.  **Plaintiff Does not Dispute Any of the Material Facts Alleged in Snackwerks' Summary Judgment Motion**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In its Opposition, Plaintiff does not dispute any of the facts presented by Snackwerks:

- On or about **July 30, 2018**, Snackwerks entered into the MSA with Plaintiff. SAC at ¶ 8.

- Plaintiff entered into a Letter of Intent with Oppenheimer on **December 29, 2020**. SAC at ¶ 15.

- Snackwerks was first introduced to Oppenheimer on a **January 8, 2021** video call. Dkt. No. 58, **Exhibit A** at Interrogatory Answer No. 7.

- Plaintiff seeks damages for the "[t]ermination of the Oppenheimer transaction and loss of the substantial expected proceeds from that transaction" in the amount of $10,043,600. *See* SAC, at ¶¶ 37, 42; Dkt. No. 58, Plaintiff's Rule 26(A)(1) Initial Disclosures, **Exhibit C** at 5.

- Plaintiff seeks damages for "[l]egal fees related to the Oppenheimer transaction incurred up to the time the transaction was terminated" in the amount of $20,000. *See* SAC, at ¶¶ 37, 42; Dkt. No. 58, **Exhibit C** at 5.

Accordingly, the fact that the Oppenheimer transaction was NOT contemplated by the parties at the time of contracting is undisputed and established.

II.  **Plaintiff Cites to No Legal Authority to Overcome Snackwerks' Showing that Unforeseeable Damages are Not Recoverable**

As discussed at length in Snackwerks' Motion, Michigan follows the rule of *Hadley v. Baxendale*, which holds that contract damages are limited to those damages that were within the contemplation of the parties at the time the contract was entered into. *See Ameriwood Indus. Int'l*

2

*Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1088 (W.D. Mich. 1997) (citing *Kewin v. Mass. Mut. Life Ins. Co*., 409 Mich 401, 295 N.W.2d 50, 53 (Mich. 1980).

Contract damages cannot be awarded for the failure of a third party venture unknown to either party at the time of entering into an agreement. *Kennedy v. Auto Owners Ins. Co.*, No. 294955, 2011 WL 3366364, at *3 (Mich. Ct. App. Aug. 4, 2011) (emphasis added) ("Consequential damages have been awarded when the loss resulted directly from the nonperformance of the contract between the parties, ***but not from the failure of another venture unknown to the defendant***"). To be foreseeable, the parties must both contemplate the effect of a breach on a *specific collateral transaction* when contracting. "Unless the parties are both aware that a breach will affect ***a specific collateral enterprise***, it cannot be said that the loss of profits from the other venture is within the contemplation of the parties." *Parmet Homes, Inc. v. Republic Ins. Co.*, 314 N.W.2d 453, 458 (Mich. Ct. App. 1981) (emphasis added).

Ignoring this law, Plaintiff argues that *general knowledge* that a startup company may want to be acquired in the future is sufficient for *any and all* future transactions to be within the contemplation of the parties at the time of contracting. Under Plaintiff's proposed expansion of the law, general or hypothetical knowledge that something, anything may happen in the future is enough to pull damages from the realm of the merely possible to being contemplated and foreseeable. Plaintiff's argument is unlimited and would extend to any future transaction that may assist a startup to grow, e.g., investments, loans, strategic partnerships, mergers, acquisitions, and any other future transaction or future business relationship imaginable. Plaintiff cites no case law for this proposition and, indeed, Plaintiff's position is unsupported by law. As discussed above, the law requires a *specific* transaction to be in the contemplation of the parties at the time of contracting for it to be foreseeable.

### III.     Each of Plaintiff's Attempts to Argue a Future Acquisition of Plaintiff was within the Parties' Contemplation are Unavailing

In its Opposition, Plaintiff goes to great lengths to establish that a factual dispute exists as to Snackwerks' *general knowledge* regarding the behavior of startups. For example, Plaintiff asserts that TTO and Snackwerks both contemplated that the parties "would grow TTO's brand and reputation for a future acquisition of TTO." (Opposition at 5). However, to the extent Plaintiff is able to establish that the parties understood that startups in general, or Plaintiff in particular, want to grow, or even want to be acquired, sometime in the future, this fact would be entirely irrelevant to whether *the Oppenheimer transaction* was in the contemplation of the parties at the time of contracting. Likewise, the existence of an "assignability" clause in the contract "to allow for a change in control" or to allow the organizations to "scale," (Opposition at 5), provides no evidence that *the Oppenheimer transaction* was in the contemplation of the Parties at the time of contracting.

Next, Plaintiff focuses on Snackwerks' President, Jeff Grogg's, familiarity with startups, alleged involvement in helping startups secure investment capital, and his experience in the food and beverage industry. (Opposition at 5-7). But, again, even if Plaintiff's assertions are taken as true for purposes of summary judgment and Mr. Grogg is shown to be an experienced professional and advisor in the food industry, this does not create a material fact as to whether *the Oppenheimer transaction* was in the contemplation of the parties at the time of contracting.

Plaintiff's final arguments actually tend to refute Plaintiff's position. First, Plaintiff argues that it had worked itself into such a precarious financial position that it needed Oppenheimer to loan it money to continue business operations at all. (Opposition at 4-5). Plaintiff, however, does not connect its inability to fund its own operations in any way to the critical question of whether *the Oppenheimer transaction* was contemplated by the parties at the

time of contracting. Second, Plaintiff argues that "Snackwerks was aware of the issues and concerns associated with a potential FDA recall of TTO products" such that it was required to maintain a recall insurance policy under the Agreement. (Opposition at 8-9). However, even if the parties contemplated the potential for a recall and protected against this risk through insurance, this, again, does nothing to suggest that *the Oppenheimer transaction* was within the contemplation of the parties at the time of contracting. In its Motion for Summary Judgement, Snackwerks has not sought judgment on Plaintiff's putative damage claims allegedly resulting from the recall—only those related to the failure of the Oppenheimer transaction.

In its Opposition, Plaintiff has identified no facts showing that *the Oppenheimer transaction* was contemplated by the parties at the time of contracting and none of the arguments advanced in Plaintiff's Opposition create a genuine issue of material fact.

**IV.    Plaintiff's Attempt to Relabel Damages Related to the Oppenheimer Transaction is Futile**

After Snackwerks filed its Motion for Summary Judgment on Plaintiff's damages claim, Plaintiff served "Plaintiff's First Supplement to Rule 26(A)(1) Initial Disclosures" in which it relabeled the very same $10,043,600 in alleged damages associated with the Oppenheimer transaction as "diminution in value" and "lost business and profits." In its Opposition, Plaintiff similarly attempts to rescue its damages claim by arguing, in the alternative, that its damages are for the diminution of the company's value and not the failure of the Oppenheimer transaction. (Opposition, at 7). It is easy to see through Plaintiff's attempted re-characterization. The damages claimed are exactly the same number and flow from the exact same allegations, i.e., that Plaintiff lost the Oppenheimer transaction. No matter the label Plaintiff uses, as identified in Plaintiff's Second Amended Complaint, these alleged damages are a direct result of the failure of the Oppenheimer transaction, were not foreseeable, and are not recoverable as a matter of law.

*See* SAC at ¶¶ 37, 42 (seeking damages for the "[t]ermination of the Oppenheimer transaction and loss of the substantial expected proceeds from that transaction" and seeking damages for "[l]egal fees related to the Oppenheimer transaction incurred up to the time the transaction was terminated").

Plaintiff's final argument, that Snackwerks is allegedly liable for "additional misfeasance," (Opposition at 9-10), improperly attempts to argue Plaintiff's liability case and, again, is completely unrelated to the issues presented to the Court on Summary Judgment. Snackwerks' Motion for Summary Judgment is clearly directed to Plaintiff's damages claims asserted in connection with Count I (breach of contract) and Count II (breach of warranty) of the Second Amended Complaint. Snackwerks has separately moved to dismiss Plaintiff's putative negligence claim as barred by the economic loss doctrine. Plaintiff's attempt to raise arguments in its Opposition that it failed to raise in its response to Snackwerks' Motion to Dismiss should be disregarded.[1]

## CONCLUSION

In consideration of the foregoing, Snackwerks respectfully requests that the Court enter judgment in favor of Snackwerks and against Plaintiff on Plaintiff's claim for damages allegedly resulting from the failure of the Oppenheimer transaction and for damages allegedly consisting of legal fees associated with the Oppenheimer transaction.

---

[1] Although completely unrelated to the only question at issue—was *the Oppenheimer transaction* contemplated by the parties at the time of contracting—Snackwerks, for the record, denies Plaintiff's recitation of the facts associated with Plaintiff's liability case, including but not limited to the assertions that Plaintiff's product was adulterated or contaminated and that Snackwerks utilized ingredients that it knew or suspected were contaminated. As argued more extensively in Snackwerks' Motion to Dismiss Plaintiff's Negligence Claim—Plaintiff has not identified any duty separate and apart from the contract, nor any case law that would permit Plaintiff to claim damages resulting from the failure of the Oppenheimer transaction based on any alleged misfeasance of Snackwerks. The parties were unaware of *the Oppenheimer transaction* at the time of contracting, and Plaintiff cannot overcome this fact.

6

**CROCKER & CROCKER**

*/s/* ~~~signature~~~

Blake D. Crocker (P38653)
107 W. Michigan Avenue, 4th Floor
Kalamazoo, MI 49007
Phone: (269) 501-4516
blake@crockerlawfirm.com

*Attorney for Defendant*